IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAREL TALASAZAN,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF LOS ANGELES, et al.,<br><br>Defendants. | NO. CV 26-0252-MCS (AGR)<br><br>**ORDER TO SHOW CAUSE TO PLAINTIFF** |

Plaintiff, who is proceeding *pro se* and *in forma pauperis*, filed a complaint. (Dkt. No. 1.)[1] The Court has screened the complaint pursuant to 28 U.S.C. § 1915(e)(2).

For the reasons set forth below, Petitioner is ordered to show cause, in writing, on or before **March 13, 2026**, why the Court should not recommend dismissal of all claims except the Fourth Amendment claims against Defendants

---

[1] Page citations are to the page numbers assigned by the CM/ECF in the header of the document.

1

City of Los Angeles and Sergeant Lopez for seizure of records and/or excessive force.[2]

## I.
## BACKGROUND

Plaintiff was suspended from the practice of law in the Commonwealth of Massachusetts for two years by order entered on June 21, 2023. *In re Harel Talasazan*, No. BD-2023-045; (Compl. ¶ 3.) Plaintiff does not allege that he appealed the suspension to the full court. *See* Supreme Judicial Court Rule 2:23. Plaintiff does not allege that he has filed a petition for reinstatement.

## II.

## LEGAL STANDARDS

"[C]ourts have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). "If a court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

The court screens the complaint pursuant to 28 U.S.C. § 1915(e)(2). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant

---

[2] *See Recchia v. City of L.A. Dep't of Animal Servs.*, 889 F.3d 553 (9th Cir. 2018).

2

is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (citations omitted).

The "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 678; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

The court reviews the complaint, materials that are the subject of judicial notice, and materials "submitted as part of the complaint."  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001); *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).

A *pro se* complaint is liberally construed.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).  Plaintiffs proceeding *pro se* should be given a statement of the complaint's deficiencies and an opportunity to cure them unless it is clear the deficiencies cannot be cured by amendment.  *Eldridge v. Block*, 832 F.2d 1132, 1135-36 (9th Cir. 1987).  Nevertheless, "district courts are only required to grant leave to amend if a complaint can possibly be saved.  Courts are not required to grant leave to amend if a complaint lacks merit entirely."  *Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (en banc).

**III.**

**DISCUSSION**

### A.   Standing and Jurisdiction

The complaint asserts claims for condemnation of property under 40 U.S.C. § 3114 (Fourteenth Claim); condemnation of property under 12 U.S.C. § 222 (Sixteenth Claim); condemnation under *Clearfield Trust Co. v. United States*, 318 U.S. 363 (1943) (Fifteenth and Seventeenth Claims); and unconstitutional taking without just compensation in violation of the Takings Clause (portion of Ninth Claim).   Briefly, Plaintiff alleges that titles to two properties in Boston, Massachusetts -- 1 Courthouse Way (John Joseph Moakley United States Courthouse) and 600 Atlantic Avenue (Federal Reserve Plaza) -- are void.  (*E.g.*, Compl. ¶¶ 92(c), 116, 120-21, 127, 131-32, 142-43.)

Plaintiff lacks standing to bring an action for condemnation of the two properties under any of his claims.  An action under § 3114 must be brought "by and in the name of the United States and under the authority of the Federal Government."  40 U.S.C. § 3114(a).  Plaintiff alleges that he is a private individual.  (Compl. ¶ 12.)  He clearly is not the United States and does not bring this action under authority of the Federal Government.

Section 222 governs national bank membership in the Federal Reserve System and has nothing to do with condemnation.  12 U.S.C. § 222; *see United States v. Philadelphia Nat'l Bank*, 374 U.S. 321, 327 (1963) (describing federal regulation of commercial banking in United States).

4

Plaintiff alleges that he has standing to condemn these two properties "as a delegate of the United States by virtue of holding federal commercial paper." (Compl. ¶ 116.)  Plaintiff claims to hold "U.S. Treasury-funded instruments and U.S Postal Money Orders," which he alleges contain an "assignment of rights" and entitle him to "exercise[] delegated eminent domain power."  (*Id.* ¶ 2.) Plaintiff's citation to *Clearfield Trust* does not support his argument.  In *Clearfield*, a check was drawn on the United States Treasury to pay for Barner's services to the Works Progress Administration ("WPA") under the Federal Emergency Relief Act.  Barner never received the check.  An imposter, pretending to be Barner, presented the check to a store that endorsed the check to Clearfield Trust, which presented it for payment to the Federal Reserve Bank.  After Barner notified the WPA that he never received the check and executed an affidavit to the effect that the signature on the check was a forgery, the United States filed suit against Clearfield Trust to recover the funds.  The district court applied state law and held that the United States unreasonably delayed in giving notice of the forgery to Clearfield Trust.  The United States Supreme Court reversed and held that "[t]he rights and duties of the United States on commercial paper which it issues are governed by federal rather than local law."  *Clearfield Trust*, 318 U.S. at 366. Nothing in the *Clearfield Trust* decision supports Plaintiff's argument that "federal commercial paper" constitutes an assignment of rights from the United States to him.

Plaintiff's Fifth Amendment claim fares no better.  To state a claim for violation of the Takings Clause, "(1) the plaintiff must own 'private property' as contemplated under the Takings Clause; (2) that private property must be taken for 'public use'; and (3) the taking entity must not have paid 'just compensation' for it." *Zeyen v. Bonneville Joint Dist.*, 114 F.4th 1129, 1139 (9th Cir. 2024).  The complaint fails at the first element.  The complaint does not allege facts showing that Plaintiff owns either property and that either property is private property.

In addition, the complaint asserts no basis for in rem jurisdiction over two properties in Boston, Massachusetts, which is not in the Central District of California.  *See Hanson v. Denckla*, 357 U.S. 235, 246 (1958) (basis of in rem jurisdiction is "the presence of the subject property within the territorial jurisdiction of the forum State").

**B.   Suspension of Plaintiff's Practice of Law in Massachusetts**

The complaint sues the Commonwealth of Massachusetts, the Supreme Judicial Court of Massachusetts, the Board of Bar Overseers of the Supreme Judicial Court of Massachusetts, the Massachusetts Board of Bar Overseers' Office of Bar Counsel, and Assistant Bar Counsel Dorothy Anderson in her official and individual capacities.

The complaint seeks (1) declaratory judgment that the order of suspension in No. BD-2023-045 is void for lack of jurisdiction and violation of procedural and substantive due process (First and Third Claims); (2) declaratory judgment that Plaintiff's "federal commercial paper" bars "continued enforcement of the void

state suspension" (portion of Second Claim, and Tenth Claim); (3) damages for "retaliatory suspension" from the practice of law in void proceedings and in violation of the Eighth Amendment (portion of Fifth Claim); (4) damages for suspension from the practice of law as a violation of the Takings Clause in the Fifth Amendment (portion of Ninth Claim); (5) damages for suspension from the practice of law under estoppel and waiver (portion of Thirteenth Claim). (*E.g.*, Compl. ¶¶ 49, 52, 55-57, 68, 70, 91, 92(b), 97, 111.)

### 1. Eleventh Amendment Immunity

The Eleventh Amendment bars federal jurisdiction over claims against a state unless the state has consented to suit or Congress has abrogated its immunity. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100 (1984). The statute, 42 U.S.C. § 1983,[3] was not intended to abrogate a state's Eleventh Amendment immunity. *Dittman v. California*, 191 F.3d 1020, 1025-26 (9th Cir. 1999) (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985); *Kentucky v. Graham*, 473 U.S. 159, 169 n.17 (1985)).

The Commonwealth of Massachusetts is a state. The Supreme Judicial Court of Massachusetts is established by the Massachusetts Constitution, Part the Second, Chapter I, Arts. III-IV. The Supreme Judicial Court of Massachusetts created, by S.J.C. Rule 4:01, the Board of Bar Overseers and the Board of Bar

---

[3] A party has no cause of action directly under the United States Constitution and must bring such claims under 42 U.S.C. § 1983. *Azul-Pacifico, Inc. v. Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992); *see Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002) ("§ 1983 merely provides a mechanism for enforcing individual rights secured elsewhere, *i.e.*, rights independently secured by the Constitution").

Overseers' Office of Bar Counsel as administrative bodies to investigate and evaluate complaints against lawyers.  As such, the Board of Bar Overseers and the Office of Bar Counsel are arms of the state.  *Johnson v. Bd. of Bar Overseers*, 324 F. Supp. 3d 276, 282, 286 (D. Ma. 2004).  Eleventh Amendment immunity extends to Defendant Anderson as Assistant Bar Counsel sued in her official capacity.  *Id.* (citing *Bettencourt v. Bd. of Registration in Med.*, 904 F.2d 772, 777 (1st Cir. 1990).  There is no indication that Massachusetts has consented to suit in federal court.  Because the complaint seeks to remedy past conduct (suspension of Plaintiff's practice of law), the *Ex Parte Young* exception does not apply to Plaintiff's claims.  *Cotto v. Campbell*, 126 F. 4th 761, 768 (1st Cir. 2025)

### 2.  **Prosecutorial Immunity**

Defendant Dorothy Anderson was assistant bar counsel in Plaintiff's disciplinary proceeding.  (Compl. ¶ 16.)

The Board of Overseers' "Bar Counsel 'prosecutes all disciplinary proceedings before hearing committees, special hearing officer[s], the Board [of Overseers], and [the Supreme Judicial Court.'"  *Johnson*, 324 F. Supp. 3d at 283 (quoting Supreme Judicial Court Rule 4:01 § 7(3)).

A bar prosecutor sued in an individual capacity has quasi-judicial immunity from suits for damages.  *Hirsch v. Justices of the Supreme Court*, 67 F.3d 708, 715 (9th Cir. 1995) (applying prosecutorial immunity to state bar disciplinary proceedings); *Johnson*, 324 F. Supp. 3d at 287 (dismissing claims against prosecutor in Board of Bar Overseers disciplinary proceedings against plaintiff;

"prosecutors enjoy absolute immunity against damages actions under Section 1983 for activities in their quasi-judicial capacity," "including their decisions to initiate administrative proceedings").

Prosecutorial immunity applies even though Plaintiff alleges that the prosecutor acted "maliciously and corruptly" and in "clear absence of all jurisdiction." *Wang v. New Hampshire Bd. of Registration in Med.*, 55 F.3d 698, 702 (1st Cir. 1995) (quoting *Pierson v. Ray*, 386 U.S. 547, 554 (1967), and *Stump v. Sparkman*, 435 U.S. 349, 357 (1978)); *see also Goldstein v. Galvin*, 719 F.3d 16, 24 (1st Cir. 2013) (prosecutorial immunity applies despite allegations of grave procedural errors). Accordingly, Plaintiff's allegations that Defendant Anderson pursued disciplinary proceedings in retaliation for Plaintiff's attempt to expose her alleged real estate fraud do not vitiate prosecutorial immunity.[4]

### C.  Tax Injunction Act

Under the Tax Injunction Act ("TIA"), "district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. The purpose of the TIA is "to prevent federal court intrusion into state tax collection, an area which deserves the utmost comity to state law and procedure." *Jerron West, Inc. v. California State Bd. of Equalization*, 129 F.3d 1334, 1338 (9th Cir. 1997); *see Fair Assessment in Real*

---

[4]  For the convoluted interpretation of property records of Dorothy Anderson in Massachusetts and Vermont, *see Talasazan v. Farrell, Clerk of Dist. Ct. of Mass.*, CV 24-1356 CJC (AGR), Dkt. No. 7 ¶ 29.

9

*Estate Ass'n v. McNary*, 454 U.S. 100, 116 (1981) (barring § 1983 actions to challenge state taxes); *Lowe v. Wahoe Cnty.*, 627 F.3d 1151, 1155 (9th Cir. 2010) ("The Supreme Court repeatedly has characterized the Act as a broad jurisdictional barrier, which limits drastically federal court jurisdiction to interfere with so important a local concern as the collection of taxes." (citations and quotations omitted)).

The complaint alleges that Plaintiff practiced law for clients in Boston, Massachusetts from his residence in Los Angeles, California. (Compl. ¶ 60.) The complaint seeks (1) a declaratory judgment that enforcement of tax levies by the City of Los Angeles ("City") and Massachusetts upon him violate the Commerce Clause (Fourth Claim); (2) relief from enforcement of Massachusetts taxes and City tax levy discharged by virtue of "federal commercial paper" and Full Faith and Credit Clause (portion of Second Claim, and Tenth Claim); (3) damages for the City's tax levy as an excessive fine in violation of the Eighth Amendment, for enforcement of the levy in violation of due process; and for seizure of his vehicle in violation of the Fourth Amendment (portion of Fifth Claim); (4) damages for the City's tax levy as a breach of a contract and breach of the covenant of good faith and fair dealing (Seventh and portion of Eleventh Claims); and (5) damages for enforcement of taxes in violation of estoppel and waiver (Thirteenth Claim). (Compl. ¶¶ 61-63, 66-67, 69, 79, 81, 96-100, 103, 111.)

The TIA bars these claims in Plaintiff's complaint so long as he has an adequate remedy in state court. *E.g.*, *Huang v. City of Los Angeles*, 637 Fed

10

Appx. 363, 364 (9th Cir. 2016) (applying TIA to suit challenging city's assessment of business taxes and penalties).  "The state court remedy need only meet 'certain minimal procedural criteria.'  Specifically, the party challenging the state tax must have access to 'a full hearing and judicial determination' of all federal constitutional objections to the tax."  *Lowe*, 627 F.3d 1155 (quoting *Rosewell v. La Salle Nat'l Bank*, 450 U.S. 503, 512 (1981)).  The state court remedy need not be "the best remedy available or even equal to or better than the remedy which might be available in the federal courts."  *Lowe*, 627 F.3d at 1155-56.

Massachusetts provides a plain, speedy, and efficient remedy in state court.  Administratively, a taxpayer first applies for an abatement from the commissioner and may appeal the decision to the Appellate Tax Board, which hears the matter de novo and issues written findings.  *DeMoranville v. Comm'r of Revenue*, 457 Mass. 30, 35 (2010).  If this administrative remedy is seriously inadequate, the taxpayer may file a declaratory relief action in Massachusetts state court.  *Id.* at 34-35; *see Flynn v. Hannaford*, 2022 U.S. App. LEXIS 37650, *3-*4 (1st Cir. Sept. 28, 2022) (finding Massachusetts law provides plain, speedy, and efficient remedy for purposes of TIA).

The California Constitution provides that a taxpayer may seek a refund of a disputed tax amount after the tax has been paid.  Cal. Const., art. XIII, § 32 ("No legal or equitable process shall issue in any proceeding in any court against this State or any officer thereof to prevent or enjoin the collection of any tax.  After payment of a tax claimed to be illegal, an action may be maintained to recover the

11

tax paid, with interest, in such manner as may be provided by the Legislature."); Cal. Rev. & Tax. Code 4807 ("No injunction or writ of mandate or other legal or equitable process shall issue in any suit, action, or proceeding in any court against any county, municipality, or district, or any officer thereof, to prevent or enjoin the collection of property taxes sought to be collected.").

California's refund procedure provides a "plain, speedy and efficient remedy" for purposes of the TIA. *Franchise Tax Bd. of Cal. v. Alcan Aluminum Ltd.*, 493 U.S. 331, 338 (1990) ("To the extent they are available, California's refund procedures constitute a plain, speedy, and efficient remedy."); *Jerron*, 129 F.3d at 1339-40 (same); *Capitol Indus. EMI, Inc. v. Bennett*, 681 F.2d 1107, 1118 (9th Cir. 1982) (California "has a 'plain, speedy, and efficient remedy' within the meaning of Section 1341"); *see Rosewell*, 450 U.S. at 505 ("remedy which requires property owners contesting their property taxes to pay under protest and if successful obtain a refund . . . is 'a plain, speedy and efficient remedy'") (citation omitted)).  A "demonstrated inability to pay a tax does not remove the jurisdictional bar of the Tax Injunction Act."  *Air Polynesia v. Freitas*, 742 F.2d 546, 548 (9th Cir. 1984).  California courts have concurrent jurisdiction over § 1983 actions.  *Brown v. Pitchess*, 13 Cal. 3d 518, 523 (1975).

Accordingly, the Court does not have jurisdiction over Plaintiff's claims challenging the levy, assessment, and collection of taxes by Massachusetts or the City of Los Angeles.  *Marvin F. Poer & Co. v. Counties of Alameda*, 725 F.2d 1234, 1235 (9th Cir. 1984) (affirming dismissal of claims for injunctive relief,

declaratory relief, and damages).  This defect cannot be cured by amendment. *Silver v. Cnty. of Los Angeles*, 2024 U.S. Dist. LEXIS 243205, *20 (C.D. Cal. Aug. 3, 2024) (dismissing claims barred by TIA without leave to amend).

### D.  **RICO**

The complaint asserts a RICO claim (Sixth Claim).

#### 1.  **Governmental Defendants**

Plaintiff cannot maintain RICO claims against a governmental entity or its employee in an official capacity.  *Abcarian v. Levine*, 972 F.3d 1019, 1027 (9th Cir. 2020).

#### 2.  **Private Defendants**

To state a civil RICO claim against a governmental employee in their individual capacity or a private person/entity, a complaint must allege "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to the plaintiff's 'business or property.'"  *Abcarian*, 972 F.3d at 1028 (citation omitted).

The complaint relies on predicate acts of mail fraud and wire fraud.  (Compl. ¶ 75.)  For mail fraud, the complaint must allege facts showing that "'(1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States mails or caused a use of the United States mails in furtherance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud.'"  *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 620 (9th Cir. 2004).  The complaint alleges that Defendant Anderson transmitted disciplinary orders

13

through the U.S. mails to Plaintiff.  (Compl. ¶ 75.)  These allegations do not show fraud.  Although Plaintiff alleges injury from the order suspending his practice of law for two years, the complaint does not identify any injury from the mailings themselves.

For wire fraud, the complaint must allege facts supporting a plausible inference that the defendants engaged in a "scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises" and that Plaintiff suffered injury by reason of that scheme.  *Children's Health DEF v. Meta Platforms, Inc.*, 112 F.4th 742, 765 (9th Cir. 2024) (quoting 18 U.S.C. § 1343), *cert. denied*, 145 S. Ct. 2846 (2025).

The complaint does not allege either element.  The complaint alleges that an imposter named Sean O'Neal filed "false certifications" to sabotage Plaintiff's litigation in *Talasazan v. Farrell*, *et al.*, Case No. CV 24-1356 CJC (AGR) (C.D. Cal.).  In that case, Microsoft Corp. was named as a defendant and was represented by the law firm DLA Piper LLP US and two of its attorneys, Sean O'Neal and Paul B. Lewis.  Mr. O'Neal filed an appearance for himself (Dkt. No. 9) and a pro hac vice application for Mr. Lewis (Dkt. No. 10).  A Notice to Filer of Deficiencies was issued for both documents due to an incorrect case number format.[5]  The Notice instructed that the party need not take any action in response unless the court directs the party to do so.  (Dkt. Nos. 11, 14.)  The court did not

---

[5] The case number was correct.  The format incorrectly used an underscore instead of a colon after the first "2" and used underscores instead of hyphens in the remainder of the case number.  (Dkt. Nos. 9, 10-1.)

14

issue any such order.  Mr. O'Neal filed a corrected pro hac vice application for Mr. Lewis.  (Dkt. No. 12.)  Plaintiff cannot show either fraud or injury from these filings, which have nothing to do with the outcome.[6]  Although the complaint notes that the court filed an Order dated March 27, 2024 (Dkt. No. 18), which was corrected on that same day (Dkt. No. 20), the Order denied Plaintiff's motion to remove a state court case involving a dispute between Plaintiff and Bank of America.  The complaint does not identify anything in either Dkt. No. 18 or Dkt. No. 20 that addresses Microsoft, DLA Piper, Mr. Lewis or Mr. O'Neal.

The complaint also alleges predicate acts of extortion based on the City's tax levy and release fees.  (Compl. ¶ 76.)  Efforts to obtain money or property on behalf of the government, however, does not constitute extortion for purposes of RICO.  *Abcarian*, 972 F.3d at 1028 (affirming dismissal of extortion-based RICO claims against government officials who wrongfully sought to obtain money for DWP and City from DWP customers) (following *Wilkie v. Robbins*, 551 U.S. 537, 563-64, 567 (2007)).

### E.   Other Claims Against DLA Piper Defendants or Microsoft Corp.

The complaint alleges fraud against the law firm DLA Piper, its attorneys Paul Lewis and Sean O'Neal, an imposter named Sean O'Neal, and Microsoft Corp. (Twelfth Claim).  (Compl. ¶¶ 107-08.)  The complaint alleges breach of the implied covenant of good faith and fair dealing against these defendants (portion

---

[6] The complaint speculates that Mr. O'Neal is an "imposter" because notice of the public electronic filings were sent to Mr. O'Neal at a DLA Piper email address and/or at a prosperalaw.com email address.  Plaintiff cannot show injury from notice sent to a person of a public filing that has nothing to do with Plaintiff.

of Eleventh Claim) as well as conversion (portion of Eighth Claim) and § 1983 claims (portion of Fifth Claim).

To allege fraud, "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). Moreover, "a plaintiff must set forth *more* than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about the statement, and why it is false." *Decker v. Glenfed*, 42 F.3d 1541, 1548 (9th Cir. 1994) (emphasis in original). The complaint fails to allege fraud for the same reasons discussed above in connection with the RICO claims.

The claim for breach of the implied covenant of good faith and fair dealing fails for lack of any contract between Plaintiff and DLA Piper, Mr. Lewis, or Mr. O'Neal ("DLA Piper Defendants"). "The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*. The covenant thus cannot 'be endowed with an existence independent of its contractual underpinnings.'" *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349 (2000) (emphasis in original; citations omitted). In *Talasazan v. Farrell*, *et al.*, Case No. CV 24-1356 CJC (AGR) (C.D. Cal.), DLA Piper and its attorneys represented an opposing party. Although the complaint cites the waiver of service executed by DLA Piper as attorneys for Defendant

16

Microsoft Corp., a waiver of service does not constitute a contract between Plaintiff and the DLA Piper Defendants.  Moreover, the complaint does not allege any breach of the waiver of service.  (*Id.*, Dkt. No. 19 at 15.)

The complaint cannot state a claim for Defendants' alleged conversion of a lawsuit.  A complaint must allege "'(a) plaintiff's ownership or right to possession of personal property, (b) defendant's disposition of property in a manner inconsistent with plaintiff's property rights, and (c) resulting damages.'"  *Voris v. Lampert*, 7 Cal. 5th 1141, 1150 (2019).  As a threshold matter, DLA Piper represented an opposing party in Plaintiff's lawsuit.  Applying conversion in this context would render every opposing party or its attorneys liable for conversion just by defending against Plaintiff's lawsuit.  In any event, the complaint does not allege any facts showing the second and third elements.  Plaintiff's lawsuit in Case No. 24-1356 was adjudicated by the court, not Defendants, and the disposition was unrelated to any filing by the DLA Piper Defendants or Microsoft.

Finally, the Fifth Claim under 42 U.S.C. § 1983 contains no factual allegations against the DLA Piper Defendants to support liability.  Moreover, the DLA Piper Defendants are private actors.  Section 1983 "'excludes from its reach merely private conduct, no matter how discriminatory or wrongful.'"  *Caviness v. Horizon Cmty. Learning Ctr.*, 590 F.3d 806, 812 (9th Cir. 2010) (citation omitted).  The complaint alleges no facts showing that the DLA Piper Defendants conspired with a state actor.  (Compl. ¶ 65.)  "[A] mere allegation of conspiracy without factual specificity is insufficient."  *Karim-Panahi v. Los Angeles Police Dep't*, 839

F.2d 621, 626 (9th Cir. 1988).  The complaint must allege enough factual matter to show "the existence of an agreement or meeting of the minds to violate constitutional rights."  *Crowe v. Cnty. of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010).

### F.   Defendant Bank of America

Although the Bank of America is named as a defendant in the caption and in the body of the complaint (Compl. ¶ 28), the complaint does not articulate any legal or factual basis for a claim against Bank of America.  *Iqbal*, 556 U.S. at 678.

### G.   State Law Claims Against California Governmental Entity or Employee

Under the California's Government Claims Act ("CGCA"), a plaintiff may not bring a suit for damages against a public entity or its employees unless the plaintiff first presents the claim to the public entity and the entity acts on the claim or is deemed to have rejected it.  *See* Cal. Gov't Code §§ 945.4, 950.2; *Mangold v. California Public Utilities Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995).

A plaintiff asserting claims subject to the CGCA "must allege facts demonstrating or excusing compliance with the claim presentation requirement." *California v. Superior Ct. (Bodde)*, 32 Cal. 4th 1234, 1243 (2004).  This pleading requirement applies to state law claims brought in federal court.  *Karim-Panahi*, 839 F.2d at 627.

The claim for injury to a person must be presented to the public entity within six months of accrual.  Cal. Gov't Code §§ 911.2(a), 915; *Bodde*, 32 Cal. 4th at

18

1239.  The claim must contain, at a minimum, the date, place, and other circumstances of the occurrence that gave rise to the claim asserted.  Cal. Gov't Code § 910.  When a claim is not presented within the six-month time frame, "a written application may be made to the public entity for leave to present that claim" within a reasonable time not to exceed one year after accrual of the cause of action."  Cal. Gov't Code § 911.4(a)-(b).  The written application must attach the proposed claim.  *Id.* § 911.4(b).  If that written application is denied, the person may petition the Superior Court for relief.  *Id.* § 946.6.

The complaint does not allege that Plaintiff complied with the CGCA as to his state law claim for conversion (portion of Eighth Claim) or any other state law claims, and does not allege facts that would excuse compliance.  The complaint's state law claims against a governmental entity or governmental employee in California are therefore barred.

**IV.**

**ORDER TO SHOW CAUSE**

Accordingly, IT IS ORDERED that Plaintiff show cause in writing, on or before ***March 13, 2026***, why the court should not recommend dismissal of all claims except the Fourth Amendment claims against Defendants City of Los Angeles[7] and Sergeant Lopez for seizure of records and/or excessive force (portion of Fifth Claim).

---

[7]   The Office of Finance of the City of Los Angeles would not remain as a separate defendant.  The Office of Finance is the Treasurer-Tax Collector of the City of Los Angeles and Plaintiff's claims are barred by the TIA as described

(continued…)

The filing of a First Amended Complaint that cures the deficiencies described in this Order shall be deemed sufficient to discharge this Order to Show Cause.

If Plaintiff does not timely file a First Amended Complaint or otherwise respond to this order to show cause, then the case may proceed solely against Defendants City of Los Angeles and Sergeant Lopez for seizure of records and/or excessive force in violation of the Fourth Amendment (portion of Fifth Claim).

DATED:  February 9, 2026

_____
ALICIA G. ROSENBERG
United States Magistrate Judge

---

(…continued)
above.

20